516 A.2d 45

**COMMONWEALTH of Pennsylvania**

v.

**Dick Lavere AHEARN, Appellant.**

Superior Court of Pennsylvania.

Submitted Aug. 4, 1986.

Filed Sept. 30, 1986.

Petition for Allowance of Appeal Denied March 4, 1987.

James N. Bryant, State College, for appellant.

Ross H. Cooper, Assistant District Attorney, Bellefonte, for Com., appellee.

Before TAMILIA, JOHNSON and HESTER, JJ.

TAMILIA, Judge:

Appellant was found guilty of first degree murder on January 9, 1964 and subsequently sentenced to life imprisonment. In *Commonwealth v. Ahearn*, 421 Pa. 311, 218 A.2d 561 (1966), judgment of sentence was affirmed on direct appeal with the Pennsylvania Supreme Court agreeing with the trial court that psychiatric testimony concerning the defense of irresistible impulse was inadmissible. A PCHA petition filed in 1970 was dismissed; the dismissal was affirmed by Pennsylvania Supreme Court in *Commonwealth v. Ahearn*, 447 Pa. 585, 287 A.2d 901 (1972), as was a subsequent PCHA petition in 1980, from which allowance of appeal to the Supreme Court was denied.

In 1985, the present PCHA petition was filed raising the issue of the retroactivity of the rule of law established in *Commonwealth v. Walzak*, 468 Pa. 210, 360 A.2d 914 (1976), which admitted into evidence, in a prosecution for murder, psychiatric testimony on the mental capacity to form the specific intent necessary for first degree murder, thereby reducing first degree murder to second degree murder.[1] Following a hearing the lower court denied appellant's petition and this appeal followed.

■ Appellant contends the court erred in refusing to apply the ruling in *Walzak, supra*, retroactively, claiming he should be granted a new trial. We do not agree.

Appellant acknowledges the difficulty of his position in citing those United States Supreme Court cases which hold that retroactivity applies only to those cases on direct appeal and does not concern itself with the substantive, procedural, constitutional or nonconstitutional nature of the case. *Hankerson v. North Carolina*, 432 U.S. 233, 246, 97

---

1. When the crime subject of this appeal was committed, it was governed by the Penal Code of 1939, Act of June 24, 1939, P.L. 872, § 701, 18 P.S. 4701. Under the present Crimes Code, the negation of a specific intent to kill would reduce the crime to murder of the third degree.

S.Ct. 2339, 2347, 55 L.Ed.2d 306 (1977); *Bradley v. School Board of Richmond,* 416 U.S. 696, 711, 94 S.Ct. 2006, 2016, 40 L.Ed.2d 476 (1974). In *Commonwealth v. Cabeza,* 503 Pa. 228, 469 A.2d 146 (1983), the Pennsylvania Supreme Court, likewise, held that retroactivity is applicable only in those cases on direct appeal in which the question is properly preserved at all stages of adjudication up to and including any on direct appeal. This is not to be interpreted to mean that once a decision has been made at the final stage of appeal, as here, that that decision is subject to review, forevermore, should the law be changed. In *Commonwealth v. Hines,* 341 Pa.Super. 456, 491 A.2d 907 (1985), in which the retroactivity was sought of liberalization of the law engendered by *Commonwealth v. McCutcheon,* 463 Pa. 90, 343 A.2d 669 (1975), requiring an interested adult to be present during interrogation of a juvenile, when the issue was not preserved on appeal, this Court held that "it seems fair in striking the balance between individual rights and the administration of criminal justice to limit retroactive applications of the case" citing *Commonwealth v. Willman,* 434 Pa. 489, at 492, 255 A.2d 534 at 535 (1969). *Hines* also took note that the *McCutcheon* rule had been applied to cases, on appeal, in which the issue had been preserved. *Commonwealth v. Barnes,* 482 Pa. 555, 394 A.2d 461 (1978); *Commonwealth v. Chaney,* 465 Pa. 407, 350 A.2d 829 (1976). Here, the appellant is not on direct appeal nor is it an appeal nunc pro tunc. Proceeding under the PCHA does not revive issues which have been raised and disposed of on appeal, or which have not been raised because they were not in the contemplation of the law at the time, and arise subsequently as an evolutionary development in the legal process. *Hines, supra; Willman, supra.*

▉ Even should retroactive effect be given to *Walzak,* it would be of no avail to appellant since appellant's defense and theory of the case was based on "irresistible impulse" which then, as now, was not recognized as a defense in Pennsylvania. *See Commonwealth v. Tyrrell,* 405 Pa. 210, 174 A.2d 852 (1961); *Commonwealth v. Carroll,* 412 Pa. 525, 194 A.2d 911 (1963). Pennsylvania has never deviated

from the McNaughten rule which requires that for a person to be legally insane "at the time he committed the act, either he did not know the nature and quality of the act or he did not know that it was wrong." *Commonwealth v. Demmitt*, 456 Pa. 475, 481, 321 A.2d 627, 631 (1974). In elaborating upon that test, our Supreme Court has noted that:

> It is not intended to separate the emotionally disturbed defendants from the emotionally healthy. Rather, it is intended to include defendants, both disturbed and healthy, among those who are held criminally responsible. . . .

*Id.,* 456 Pa. at 481, 321 A.2d at 631.

This precisely was the holding by the Supreme Court in this case at *Commonwealth v. Ahearn, supra,* and is unchanged, despite *Walzak,* to the present time. Appellant would now change his defense theory, prospectively to conform with *Walzak's* acceptance of a diminished capacity concept. This, too, must fail as the proof offered by way of psychiatric testimony to establish the failed defense of irresistible impulse is qualitatively different than that required for diminished capacity. As the court stated in *Walzak:*

> ... The doctrines of diminished capacity and irresistible impulse involve entirely distinct considerations. Irresistible impulse is a test for insanity which is broader than the M'Naghten test. Under the irresistible impulse test a person may avoid criminal responsibility even though he is capable of distinguishing between right and wrong, and is fully aware of the nature and quality of his act provided he establishes that he was unable to refrain from acting. An accused offering evidence under the theory of diminished capacity *concedes general criminal liability.* The thrust of this doctrine is to challenge the capacity of the actor to possess a particular state of mind required by the legislature for the commission of a certain degree of the crime charged.

*Id.,* 468 Pa. at 221, 360 A.2d at 919. *Walzak* recognized that with psychiatric techniques, not available earlier, the

reliability of psychiatric testimony in determining diminished capacity is now sufficient to consider it. Thus, although a person may be sane for purposes of the McNaughten test, the capacity to act may be diminished so that the requisite intent for commission of the crime may not be present. However, to permit a restructuring of evidence or an attempt to establish the diminished capacity of appellant to commit the crime charged more than twenty-three years after its commission, would be an exercise in imaginative fabrication or psychological reconstruction. To do so would unravel the stability of the criminal justice system and leave every case open to retroactive application of every new legal theory or medico-socio/psychological development that came into vogue.

This case has had its review in depth, through the most exhaustive proceedings permitted by our appellate process. The PCHA court adequately reviewed the record and fully analyzed and properly applied the law as to retroactivity in this case. *See Commonwealth v. Lutz,* 492 Pa.Super. 500, 424 A.2d 1302 (1981). We find no error in that process and dismiss the current PCHA proceeding as being without merit.

Order affirmed.

JOHNSON, J., concurs in the result.